**NORTH AMERICAN COAL CORPORATION, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Rochino Ariotti, Respondents.**

**No. 86–2424.**

United States Court of Appeals, Tenth Circuit.

Aug. 18, 1988.

David J. Millstone (David J. Somrak and Donald A. Wall, of counsel, with him on the briefs), of Squire, Sanders & Dempsey, Cleveland, Ohio, for petitioner.

Sylvia T. Kaser (George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Counsel for Appellate Litigation; Thomas L. Holzman, Asst. Counsel for Appellate Litigation, with her on the brief), U.S. Dept. of Labor, for respondents.

Before MOORE, ANDERSON and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

North American Coal Corporation (North American) petitions this court for review of a decision of the Benefits Review Board filed July 31, 1986. The Benefits Review Board affirmed a decision of the Administrative Law Judge awarding medical benefits to the respondent, Rochino Ariotti, under part C of the Black Lung Act, 30 U.S.C. §§ 901–945.

In 1971, Mr. Ariotti was awarded disability benefits under part B of the Act by the Social Security Administration. These benefits are not an issue. The parties have stipulated that Mr. Ariotti has complicated coal workers pneumoconiosis which arose out of his coal mine employment.

The Black Lung Benefits Reform Act of 1977 provided that claimants who had previously been allowed disability benefit under part B could now file an application for and also receive medical benefits under part C. The Act directed that all recipients of disability benefits under part B be notified of this opportunity and be given no less than six months after notification to file their claims for medical benefits under part C, 30 U.S.C. § 924a.

On April 25, 1978, the Secretary of Labor published a proposed rule permitting eligible miners (part B beneficiaries) to file claims for medical benefits under part C within six months from mailing "unless the period was extended for good cause shown." On May 3 and 4, 1978, the Department of Labor sent the requisite notifications.

On August 15, 1978, the final rules were published in the Federal Register. Both the proposed rule and the final rule provided for a "cut-off" date of six months from notification in which to file a claim for part C benefits. During the initial six month period following notification, while it was receiving comments on the proposed rules, the Department of Labor learned that many thousands of eligible miners were not filing for medical benefits because they mistakenly believed that an adverse decision with respect to medical benefits might also result in a termination of their monthly disability benefits under part B.

Consequently, on October 27, 1978, approximately one week prior to the expiration date as specified in the proposed and final rules, the Secretary of Labor promulgated an amended rule which extended the filing deadline from November 3–4, 1978, to June 30, 1979. This amended rule was published in the Federal Register and was published without notice and without an opportunity for public comment. 43 Fed. Reg. 50171 (1978). The amended rule was made effective as of the date of publication. Included with the amended rule in the publication was the following supplemental information:

> The Department ... notified all part B miner-beneficiaries of their right to file claims for part C medical benefits on May 3 and 4, 1978. The Department of Labor has been advised that many part B miner-beneficiaries have failed to file claims ... because they believe that an adverse decision on their claim [sic] for medical benefits may result in a termination of the right to continuing compen-

sation ... under part B. Although ... continued entitlement to such benefits cannot and will not be affected ... experience to date, as well as the review of materials circulated prior to August 18, 1978 ... indicates that a misunderstanding does exist among the claimant population. To insure that no ... eligible miner is deprived of the right to seek medical benefits, I find that it is in the public interest to amend the provisions ... to provide that claims for medical benefits ... may be filed up to and including June 30, 1979. I further find that since the current 6–month period will expire on or about November 3, 1978, the notice and public procedure on this amendment to the rules are contrary to the public interest.

*Id.* at 50172. Mr. Ariotti filed his claim on June 25, 1979.

While not an issue before this Court, the Department of Labor, in the continuing and well founded belief that many thousands of eligible miners were still failing to file, based upon a misunderstanding of the new law, subsequently extended the filing deadline at least three times.

North American petitioned this court for review, contending that the amendment to the rule extending the filing deadline to June 30, 1979, is invalid as this extension was adopted without advance public notice or opportunity for public comment as required by § 4 of the Administrative Procedure Act (APA), 5 U.S.C. § 553. North American also contends that as the thirty-day publication prior to the effective date was not met, the rule is invalid.

The question of whether the Secretary of Labor promulgated the rule in accordance with the APA is a question of law which we review *de novo. Carozza v. United States Steel Corp.,* 727 F.2d 74, 76–77 (3d Cir.1984).

The APA is applicable to Department of Labor rule making under the Black Lung Benefits Act. 30 U.S.C. § 936(a). There can be no doubt the extension of the filing deadline is a "rule" within the definition set forth in the APA, 5 U.S.C. § 551(4).

Section 553 of the APA prescribes essentially three requirements for the rule making process: (1) advanced publication of the proposed rule or its substance in the Federal Register; (2) opportunity for public participation in the rule making process; and (3) publication of the final rule, including a concise statement of its basis and purpose thirty days before its effective date. 5 U.S.C. § 553(b)-(d). The APA further recognizes exceptions to these rule making requirements. Advance publication and opportunity for public participation are not necessary "when the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public [comment] thereon are impracticable, unnecessary or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). The final publication thirty days in advance of a rule's effective date is not necessary "for good cause found and published with the rule." 5 U.S.C. § 553(d)(3).

It is fundamental law that a rule promulgated by a federal agency is not valid unless adopted in substantial compliance with the requirements of the APA. Our inquiry is therefore directed to the determination of whether the rule extending the time to file part C claims was adopted in substantial compliance with the requirements of the APA. *People of State of California v. Simon,* 504 F.2d 430, 439 (Temp.Emer.Ct. App.1974), *cert. denied,* 419 U.S. 1021, 95 S.Ct. 496, 42 L.Ed.2d 294 (1974).

A reading of the rule and supplemental information clearly shows the Secretary found for good cause that notice and public comment are contrary to the public interest. A reading of the publication likewise shows the Secretary incorporated both "the finding" and a "brief statement of the reasons therefor" in the rule involved.

Appellant argues that the "good cause" and "public interest" exceptions to the APA are to be "narrowly construed and only reluctantly countenanced." This is an accurate statement of law. However, when the statutory requirements are fulfilled, the matter is no longer one of construction.

Appellants contend there was no unforeseen emergency nor other reason why the Secretary could not have complied with the APA. This court has considered this question in *Northern Arapahoe Tribe v. Hodel*, 808 F.2d 741 (10th Cir.1987). There we held the Secretary bears the burden of demonstrating "good cause"; the "good cause" exception is essentially an emergency procedure; and this exception is an important safety valve to be used *where delay would do real harm*. Many miners would suffer financial and other hardships if there were a delay. It can safely be concluded, therefore, that the delay caused by a public notice and comment period would cause real harm. We conclude that the loss or delay of medical benefits to many eligible coal miners was a real harm and the extension of the filing deadline operated as a safety valve to prevent this harm.

Appellants next contend that the decision of the Benefits Review Board was erroneous when it concluded that the extension of time to file part C claims was "procedural" and, therefore, exempt from the notice and comment procedures pursuant to 5 U.S.C. § 553(b)(3)(A). We need not reach this issue in view of our conclusion that the rule was adopted in substantial compliance with the requirements of § 553(b)(3)(B) of the APA.

We conclude there was substantial compliance with the APA in extending the deadline for filing claims for medical benefits under part C.

Appellants argue the rule extending the time for filing was invalid as the rule was not published thirty days prior to its effective date. This argument has no merit. Section 553(d)(3) of the APA provides this requirement is not necessary "for good cause found and published with the rule." This statutory requirement was fulfilled. Even if it were not, the rule would not be invalid under *Rowell v. Andrus*, 631 F.2d 699 (10th Cir.1980), where we held a rule which has been erroneously adopted without the thirty day delayed effective date becomes effective thirty days following the publication of the rule as adopted. Here the publication was made in November 1978 and Mr. Ariotti filed his claim in June 1979.

We have carefully considered the remaining arguments and contentions raised by North American and find them without merit.

For the reasons stated herein, the decision of the Benefits Review Board is AFFIRMED.